UNITED STATES v. SOUTHERN PAC. R. CO. et al.

(Circuit Court of Appeals, Ninth Circuit. October 9, 1899.)

No. 484.

PUBLIC LANDS — LANDS SOLD BY RAILROADS — ACTS FOR PROTECTION OF PUR-
CHASERS.

The provisions of Act March 3, 1887, and of the supplementary act of
March 2, 1896, in behalf of purchasers of lands erroneously certified or
patented to a railroad company, were designed to protect all persons who
purchased from the railroad company in good faith, and in the belief that
they would obtain title; and the fact that such person was chargeable
with constructive notice of the invalidity of the company's title does not
affect his character as a "purchaser in good faith," under the former act,
or as a "bona fide purchaser," under the latter.

Appeal from the Circuit Court of the United States for the South-
ern District of California.

Joseph H. Call, Special U. S. Atty.

Wm. Singer, Jr. (Wm. F. Herrin, of counsel), for appellees.

Before GILBERT and MORROW, Circuit Judges, and HAWLEY,
District Judge.

MORROW, Circuit Judge. This suit was brought by the United
States against the Southern Pacific Railroad Company, D. O. Mills,
and Gerritt L. Lansing, trustees in a mortgage executed by the com-
pany, and the City Brick Company, in the circuit court for the
Southern district of California, on May 17, 1890, to quiet the title
of the United States to certain tracts of land, aggregating about
700,000 acres, within the limits of the forfeited grant to the Atlantic
& Pacific Railroad Company. By an amended bill filed September 25,
1891, certain other defendants were made parties to the action.
These latter defendants, in their answer to the amended bill, set up
the title of the Southern Pacific Railroad Company to the lands
claimed by them, and alleged that they were bona fide purchasers of
said lands, for value, from the Southern Pacific Railroad Company
and its grantees, and as such bona fide purchasers they were entitled
to have the bill dismissed as to them. There was evidence introduced
in support of this defense upon the trial of the case, establishing the
fact that the Southern Pacific Railroad Company had sold, under
contracts and deeds to the defendants brought in by the amended
bill, about 127,000 acres of the land in suit; and the decree of the
circuit court, after adjudging that the United States was the owner,
by title in fee-simple absolute, of the lands described in the bill of
complaint, provided that the decree should not "in any wise affect
any right which the defendants, or any of them, other than the said
Southern Pacific Railroad Company, now have or may hereafter ac-
quire in, to, or respecting any of the lands hereinbefore described, in
virtue of the act of congress entitled 'An act to provide for the ad-
justment of land grants made by congress to aid in the construction
of railroads, and for the forfeiture of the unearned lands, and for
other purposes,' approved March 3, 1887." From this decree the

Southern Pacific Railroad Company and the other defendants appealed to this court, where the decree of the circuit court was affirmed (16 C. C. A. 114, 69 Fed. 47); and thereupon the defendants appealed to the supreme court of the United States, where the decree was also affirmed (168 U. S. 1, 66, 18 Sup. Ct. 18, 42 L. Ed. 355). The mandate of the supreme court was as follows:

"The decree is affirmed in all respects as to the Southern Pacific Railroad Company, as well as to the trustees in the mortgage executed by that company, and also as to the other defendants, subject, however, to the right of the United States to proceed in the circuit court to a final decree as to these defendants."

Upon filing this mandate in the circuit court, the United States dismissed further proceedings as to certain defendants, other than the Southern Pacific Railroad Company and the trustees in the mortgage executed by the company, respecting certain tracts of land, and at the same time moved for a further decree against certain other defendants respecting certain tracts of land claimed by them. The circuit court thereupon rendered a further and final decree as to the rights and interests of such other defendants. With respect to certain defendants claiming lands for which no patents had been issued by the United States, it was adjudged in the decree that they were citizens of the United States, and bona fide purchasers of the land claimed by them from and under the Southern Pacific Railroad Company, within the meaning of section 5 of the act of congress approved March 3, 1887, entitled "An act to provide for the adjustment of land grants made by congress to aid in the construction of railroads, and for the forfeiture of unearned lands, and for other purposes;" that for these lands the defendants were entitled to make payments to the United States, and secure patents from the United States therefor, upon complying with the provisions of the act of March 3, 1887, in that behalf. With respect to certain defendants claiming lands for which patents had been issued by the United States to the Southern Pacific Railroad Company, it was adjudged in the decree that they were bona fide purchasers from and under the Southern Pacific Railroad Company, within the meaning of section 4 of said act of congress approved March 3, 1887, and within the meaning of the act of congress approved March 2, 1896, entitled "An act to provide for the extension of time within which suits may be brought to vacate and annul land patents, and for other purposes;" that said lands having been erroneously patented by the United States to said Southern Pacific Railroad Company, and said defendants having purchased said lands from the railroad company in good faith, the title of the defendants, and of their heirs, grantees, and assigns, to said lands, was by the decree confirmed. From this decree the United States has appealed to this court, upon the grounds that the circuit court erred in adjudging that the defendants named in the decree were bona fide purchasers of the lands, within the meaning of the acts of congress of March 3, 1887, and March 2, 1896. The decree contains 33 sections, the first 12 of which adjudicate upon the titles of those defendants who claim certain specified tracts of land as bona fide purchasers from the Southern Pacific Railroad Com-

pany, and for which no patent has been issued by the United States. These lands amount to 43,315.67 acres. The remaining 21 sections of the decree adjudicate upon the titles of those defendants who claim certain specified tracts of land as bona fide purchasers from the Southern Pacific Railroad Company, and for which patents have been issued by the United States to the railroad company. These lands amount to 9,284.39 acres, making a total of 52,600.06 acres, the titles to which are involved in this further and final decree. The opinion of the supreme court in this case indicates the precise questions that were to be determined by the circuit court, and the scope and character of its decree. It said:

"One of the objects of this suit was to obtain a decree quieting the title of the United States, not only to the lands claimed by the Southern Pacific Railroad Company, but to those claimed by numerous individual defendants by purchase from or contract with that company. The decree which was passed declares that it is not to 'affect any right which the defendants, or any of them, other than the Southern Pacific Railroad Company, now have or may hereafter acquire in, to, or respecting any of the lands hereinbefore described, in virtue of the act of congress entitled "An act to provide for the adjustment of land grants made by congress to aid in the construction of railroads and for the forfeiture of unearned lands, and for other purposes," approved March 3, 1887.' Instead of leaving undetermined the matters in dispute between the United States and the defendants other than the Southern Pacific Railroad Company, the circuit court should have determined, by its final decree, what rights those defendants have, by virtue of the above act of March 3, 1887 (24 Stat. 556, c. 376), in the lands, or any of them, now in dispute, and claimed by the United States. The effect of the decree is to leave undetermined the question whether the defendants who claim under the Southern Pacific Railroad Company are protected by that or any other act of congress. The government was entitled to a decree quieting its title to all the lands described in its pleadings, except those, if any, that are protected, in the hands of claimants, by acts of congress. U. S. v. Winona & St. P. R. Co., 165 U. S. 463, 17 Sup. Ct. 368, 41 L. Ed. 789; Winona & St. P. R. Co. v. U. S., 165 U. S. 483, 17 Sup. Ct. 381, 41 L. Ed. 789. But, as the government has not appealed, the decree cannot be reversed for the error of the circuit court in not finally disposing of the issues between the United States and the individual defendants who claim under the Southern Pacific Railroad Company." Southern Pac. R. Co. v. U. S., 168 U. S. 65, 66, 18 Sup. Ct. 18, 42 L. Ed. 355.

In the case of U. S. v. Southern Pac. R. Co. (No. 495; decided at the present term of this court) 98 Fed. 27, one of the questions considered and determined was as to the right of certain purchasers from the Southern Pacific Railroad Company to have a decree confirming their title under the act of March 2, 1896, where patents to the lands had been issued to the railroad company. It was there held, upon the authority of U. S. v. Winona & St. P. R. Co., 165 U. S. 463, 477, 17 Sup. Ct. 368, 41 L. Ed. 789, that the purchasers were bona fide purchasers, and were fully protected by the statute. This decision of the supreme court is also applicable to the facts in the present case. Within the meaning of the statute as thus construed, the defendants referred to in the last 21 sections of the present decree were bona fide purchasers from the railroad company; that is to say, they purchased the land from the company in good faith, believing that they would thereby acquire title to the land. Possessed of this qualification, they were entitled to have their titles confirmed by the decree.

With respect to purchasers of land from the railroad company where no patents have been issued by the United States, the supreme court, in the Winona Case, indicates that the same broad construction is to be given to the statute to protect honest transactions between the purchasers and the railroad company. The policy pursued by all the land-grant railroad companies contemplated the settlement of the country by immigrants as the roads were being constructed; and, to carry out this policy, it was necessary for the railroad companies in many instances to furnish settlers seeking to purchase lands supposed to be railroad lands with some evidence of a right to title in a contract of sale, in advance of the transfer of the title by the United States to the railroad companies by patent. This policy, and its practical operation, has been known to the public, and has been frequently commented upon by the courts and the officers of the land department of the government, in determining the rights of settlers within the limits of the railroad grants. When, therefore, congress passed the act of March 3, 1887, providing for the adjustment of land grants made by congress to aid in the construction of railroads, it had this condition of affairs in view, and dealt with it upon the broad principle that the good faith of the parties in making such contracts should be controlling considerations in determining all questions in controversy. In this view of the act, and applying its provisions to the present case, it is clear that the purchasers mentioned in the first 12 sections of the decree were bona fide purchasers from the railroad company, and as such were entitled to make payments to the United States for the land in dispute, and secure a patent therefor as provided by law. The decree of the circuit court is affirmed.